150 P.3d 1022 (2006)
2007-NMCA-017
Joan FERRELL, Maria C. Cappuzzello, Elizabeth Martinez, and H. Jake Salazar, for themselves and all others similarly situated, Plaintiffs-Appellees,
v.
ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Defendants-Appellants.
No. 26,058.
Court of Appeals of New Mexico.
November 29, 2006.
Certiorari Granted January 23, 2007.
*1024 Floyd D. Wilson, McCary, Wilson & Pryor, Robert Hanson, Peifer, Hanson & Mullins, David Freedman, Freedman, Boyd, Daniels, Hollander & Goldberg, P.A., John M. Eaves, Alan Konrad, Eaves & Mendenhall P.A., Albuquerque, NM, Timothy G. Blood, Lerach Coughlin Stoia Geller Rudman & Robbins, LLP, San Diego, CA, for Appellees.
Lisa Mann, Jennifer A. Noya, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, Jeffrey Lennard, Mark L. Hanover, Sonnenschein Nath & Rosenthal LLP, Chicago, IL, for Appellants.
Randal W. Roberts, Simone, Roberts & Weiss, P.A., Albuquerque, NM, for Amicus Curiae National Association of Insurance Commissioners.
Ann Maloney Conway, Dylan O'Reilly, Miller Stratvert P.A., Albuquerque, NM, for Amicus Curiae Property Casualty Insurers Association of America.
Certiorari Granted, No. 30,165, January 23, 2007.

OPINION
PICKARD, Judge.
{1} In this case, we review the district court's decision to certify a multistate class action. We determine that the district court erred in concluding that New Mexico law should be applied to all class members. We also determine that the case cannot proceed with the district court applying the laws of the various jurisdictions because, under those circumstances, the action would fail to meet the requirements of Rule 1-023 NMRA as a matter of law. Finally, we address whether the defendant has waived its right to argue on remand or in any subsequent appeal that the class should not have been certified with regard to New Mexico class members. We reverse the portion of the certification order that certified the class with regard to proposed plaintiffs from other states, and we remand for the action to proceed on behalf of the class of New Mexico plaintiffs only.
BACKGROUND
{2} This case is similar to a "modal premium" case. Such cases generally involve the *1025 legitimacy of a life insurance company charging an additional fee for payment of the premium in installments. Plaintiffs' theory of the case is as follows. Allstate issues vehicle insurance policies showing an amount of money that is labeled "TOTAL PREMIUM." Allstate offers its insureds the option of paying on a monthly basis. When insureds choose to pay on a monthly basis, they pay a service fee of $3.50 per month. That fee is clearly disclosed on the bills received by insureds, but it is not included in the amount designated as the "TOTAL PREMIUM" on the face of the insurance policy. Plaintiffs contend that Allstate has breached its contracts with its insureds by "charging premiums, in the form of service fees, which exceed the "TOTAL PREMIUM' . . . specified in their policies."
{3} Plaintiffs rely heavily on two New Mexico statutes, which we discuss below. See NMSA 1978, § 59A-18-3 (1984) (defining "premium"); NMSA 1978, § 59A-16-24(B) (1984) (prohibiting certain charges that are not indicated in the insurance policy). Citing the general proposition that "[a] contract incorporates the relevant law, whether or not it is referred to in the agreement," see Allstate Ins. Co. v. Perea, 2000-NMCA-070, ¶ 19, 129 N.M. 364, 8 P.3d 166 (internal quotation marks and citation omitted), overruled on other grounds by Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 133 N.M. 661, 68 P.3d 901, Plaintiffs appear to argue that by virtue of acting in contravention of the two New Mexico statutes, Allstate has necessarily breached its contracts with its insureds.
{4} Plaintiffs initially asked the district court to certify a class of Allstate insureds from fifteen states. Finding that proposed class members from two of the fifteen states should not be included in the class, the district court certified the following class: persons "who have, within six years of the commencement of this action, paid installment fees to Allstate, and reside in these thirteen (13) states: Alaska, Arizona, California, Florida, Idaho, Kentucky, Montana, Nevada, New Mexico, North Dakota, Oregon, West Virginia and Wyoming." With regard to choice of law, the district court made the following two findings:
13. The law is sufficiently uniform across the fifteen (15) states in the proposed class action as to interpretations of insurance contracts, breach of contract law, definition of and specification of insurance premiums, ambiguities in policies construed in favor of insured and right to trial by jury.
. . . .
c. The case is manageable in the forum of New Mexico as there is no debilitating conflict of law among the thirteen (13) states on the issues of contract interpretation, right to jury trial, and the definition and specification of insurance policy premiums[.]
It appears that the district court intended to apply New Mexico law to the entire class.
{5} Allstate filed an application for interlocutory review of the certification decision under Rule 1-023(F), which we granted. On appeal, Allstate argues that the district court erred in certifying the class because there are significant differences between the laws of the class states, making it improper to apply New Mexico law to all class members. Allstate also raises an issue involving forum selection clauses that appear to be present in some of the policies, but due to our disposition on the choice-of-law question, we need not reach the issue of the forum selection clauses.
STANDARD OF REVIEW
{6} We generally review a certification decision for abuse of discretion. Berry v. Fed. Kemper Life Assurance Co., 2004-NMCA-116, ¶ 25, 136 N.M. 454, 99 P.3d 1166. However, we think it more appropriate to review the district court's choice-of-law decision de novo. See Nat'l Bank of Ariz. v. Moore, 2005-NMCA-122, ¶ 7, 138 N.M. 496, 122 P.3d 1265 (stating that choice of law is reviewed de novo); see also In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1016 (7th Cir.2002) (conducting "plenary" review of choice-of-law question in the context of class certification); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186-87 (9th Cir.2001) (reviewing certification decision for abuse of discretion, but reviewing choice-of-law issues that bear on certification *1026 de novo), opinion amended on denial of rehearing by 273 F.3d 1266 (9th Cir.2001); Spence v. Glock, Ges.m.b.H., 227 F.3d 308, 310-11 (5th Cir.2000) (same); Vanderbilt Mortgage & Fin., Inc. v. Posey, 146 S.W.3d 302, 310, 313 (Tex.Ct.App.2004) (same); and see Stetser v. TAP Pharm. Prods., Inc., 165 N.C.App. 1, 598 S.E.2d 570, 579 (2004) (conducting de novo review of choice-of-law question in the context of class certification).
{7} We recognize that Berry set forth the general abuse of discretion standard and then conducted a review of the district court's choice-of-law decision, purportedly under that standard. 2004-NMCA-116, ¶¶ 25, 82-94, 136 N.M. 454, 99 P.3d 1166. However, an examination of Berry's choice-of-law analysis does not reveal deference to the district court's decision. See id. ¶¶ 82-94. Moreover, the general rule is that a district court always abuses its discretion when it makes a legal error. See, e.g., id. ¶ 25 ("The district court abuses its discretion when it misapprehends the law[.]"). The determination of whether the district court made a legal error is obviously itself a question of law that should be reviewed de novo. Accordingly, regardless of how we label the appropriate standard of review in this case, the district court's choice-of-law determination is ultimately a question of law that is subject to de novo review.
DISCUSSION
{8} On appeal, Allstate argues that the laws of the class states are not similar enough to New Mexico law to allow application of New Mexico law to all class members. Plaintiffs contend that this case presents a false conflict of laws such that forum law can be applied to all class members. Plaintiffs argue in the alternative that the case may still proceed as a multistate class action even if the laws of numerous jurisdictions must be applied. Plaintiffs also argue that by taking an interlocutory appeal of the district court's certification decision without arguing that certification was improper as to class members from New Mexico, Allstate has waived the right to argue against certification with regard to New Mexico class members. We conclude that New Mexico law cannot be applied to out-of-state class members and that the case cannot proceed as a multistate class action. We also hold, as we explain below, that Allstate retains only a limited right to argue against certification of a class made up of only New Mexico insureds.
1. General Statement of the "False Conflict" Doctrine
{9} Plaintiffs' primary argument is that this case presents a "false conflict." A false conflict can occur where "the laws of the involved states are identical, or different, but produce identical results." See Eugene F. Scoles et al., Conflict of Laws § 2.9, at 28 n. 16 (4th ed.2004) [hereinafter Scoles]. When presented with a false conflict situation, a court may ignore choice-of-law questions and apply forum law. We are not aware of any New Mexico case that has applied the false conflict rule. But cf. First Nat'l Bank in Albuquerque v. Benson, 89 N.M. 481, 484, 553 P.2d 1288, 1291 (Ct.App. 1976) (Hernandez, J., dissenting) (stating that a Supreme Court case did not decide the relevant question because the Supreme Court case actually presented a "false conflict"). However, it appears to be a logical and widely used rule, and we see no reason to disallow its use in New Mexico. See, e.g., Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir.2006) ("According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a `false conflict,' and the [c]ourt should avoid the choice-of-law question."); Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc., 182 Or.App. 347, 49 P.3d 803, 806 (2002) ("If there is no material difference, there is a `false conflict,' and [the forum law] governs."); Alaska Nat'l Ins. Co. v. Bryan, 125 Wash.App. 24, 104 P.3d 1, 5 (2004) ("If applying the two states' laws would produce the same result, there is a `false conflict' and [the forum state's] law will presumptively apply.").
{10} Accordingly, we will begin our analysis by setting forth the New Mexico law relied on by Plaintiffs and then comparing that law with the laws of the relevant jurisdictions *1027 to determine whether this case presents a false conflict.
2. Comparison of State Laws
{11} We start by setting forth the New Mexico law that Plaintiffs contend should be applied to all class members, and we provide more detail regarding Plaintiffs' theory of the case. We expressly decline to make any comment on the merits of Plaintiffs' breach of contract claim, because the merits are not before us in this appeal.
{12} As noted above, Plaintiffs' breach of contract claim relies on two New Mexico statutes. First, Plaintiffs rely on Section 59A-18-3, which states as follows:
As used in the Insurance Code[,] "premium" means the consideration for insurance or for an annuity, by whatever name called. Any "assessment," or any "membership," "policy," "survey," "inspection," "service" or similar fee or other charge in consideration for an insurance or annuity contract or procurement thereof is part of the premium.
Plaintiffs also rely on Section 59A-16-24(B), which states in pertinent part as follows: "No person shall wilfully collect as premium, administration fee or other charge for insurance or coverage any sum in excess of the premium or charge applicable thereto as specified in the policy[.]"
{13} Plaintiffs contend that every class state has a statute similar to our Section 59A-16-24(B), or an "illegal dealing in premiums" statute. We need not address the issue of the illegal dealing in premiums statute, however, because we determine that New Mexico's statutory definition of premium cannot be applied classwide, and thus Plaintiffs' position fails.
{14} Plaintiffs repeatedly argue that their case does not depend on New Mexico's statutory definition of "premium." Plaintiffs express their argument as follows:
Plaintiffs' claim is very simple. Plaintiffs entered to contracts for insurance with [Allstate]. Allstate agreed to provide the Plaintiffs with automobile insurance coverage in return for the "Total Premium" specified in the policies. Allstate breached that contract by charging Plaintiffs more than the specified premium when Plaintiffs paid in monthly installments. Plaintiffs, on behalf of themselves and all others similarly situated, seek to recover damages for this breach of the plain language in the insurance contract.
Plaintiffs contend that the statutes "simply provide a framework for the interpretation of Allstate's contracts of insurance." However, Plaintiffs also acknowledge that they purposefully limited the class to insureds from states with similar definitions of the term "premium," because "the issues involved in this case include whether Allstate's service fees are `premium' under applicable law, as well as whether the service fees must be stated in the insurance policy itself."
{15} The thrust of Plaintiffs' argument appears to be as follows: even if this Court determines that the various states' laws regarding the definition of "premium" are too dissimilar to permit application of the New Mexico statute to all class members, we should still uphold the certification because Plaintiffs' case does not depend on the statutes, and the common law governing interpretation of insurance contracts is uniform throughout the country. See Berry, 2004-NMCA-116, ¶ 82, 136 N.M. 454, 99 P.3d 1166. We reject this argument.
{16} If the fees are not "premium," then Allstate has not breached the insurance contract by charging more in "premium" than it promised to. Accordingly, Plaintiffs' claim will eventually require the district court to define "premium" and to determine whether the fees constitute premium. Plaintiffs have not suggested any definition of premium aside from that set forth in the New Mexico statute, and we are not persuaded that Plaintiffs' claim could proceed without reliance on the statute. Moreover, under these circumstances, it does not really matter whether Plaintiffs' breach of contract claim could possibly survive if Plaintiffs did not rely on the statutory definition of premium. The point is that Plaintiffs have shown that they intend to try the case by relying heavily on that definition. Cf. id. ¶ 53 ("We start the predominance analysis by examining how the parties intend to litigate the case[.]"). Accordingly, *1028 the statute is central to the case, and we must determine whether it can be applied to the out-of-state class members.
{17} Of the twelve class states, there appear to be six states that have a statutory definition of "premium" that is materially the same as the definition found in New Mexico's Section 59A-18-3. See Alaska Stat. § 21.90.900(35) (Lexis through 2005 legislation); Fla. Stat. § 627.403 (West, Westlaw through 2006 legislation); Idaho Code Ann. § 41-1803 (West, Westlaw through 2004 legislation); Ky.Rev.Stat. Ann. § 304.14-030 (West, Westlaw through 2005 Sess.); Nev. Rev.Stat. § 679A.115 (West, Westlaw through 2005 legislation); Wyo. Stat. Ann. § 26-1-102(a)(xxii) (West, Westlaw through 2005 Sess.). There appear to be three states that have statutes that essentially define premium as "the consideration for insurance" but do not provide the list of examples that New Mexico's statute does. See Ariz.Rev. Stat. Ann. § 20-1103 (West, Westlaw through 2006 legislation); Mont.Code Ann. § 33-15-1102(6) (West, Westlaw through 1991 legislation); W. Va.Code § 33-1-17 (West, Westlaw through 2006 Sess.); see also Fla. Stat. § 627.041(2) (West, Westlaw through 2006 legislation). Finally, there are three states, California, Oregon, and North Dakota, that do not have a statutory definition of premium at all. California and Oregon both have judicial decisions holding that fees charged by insurance companies for the privilege of paying in monthly installments constitute "gross premium" for purposes of statutory or constitutional provisions that require insurance companies to pay taxes on the "gross premiums" collected. Allstate Ins. Co. v. State Bd. of Equalization, 169 Cal.App.2d 165, 336 P.2d 961, 964, 967 (Dist. Ct.App.1959); State ex rel. Earle v. Allstate Ins. Co., 221 Or. 371, 351 P.2d 433, 434-36 (1960), modified on other grounds by Parr v. Dep't of Revenue, 276 Or. 113, 553 P.2d 1051 (1976) (en banc). None of the class states have appellate court opinions interpreting the statutory definition of premium or otherwise deciding whether fees constitute premium in the context of a breach of contract issue.
{18} We do not think the various states' definitions of premium can be characterized as "identical" to New Mexico's, and we certainly cannot say that the laws would produce "identical results." See Scoles, supra, § 2.9, at 28 n. 16 (noting that the false conflict rule applies where states have laws that are "identical" or would "produce identical results").
{19} As a preliminary matter, we note that while the false conflict doctrine states that the doctrine is applicable where either the laws are identical or they are different but would produce identical results, the real question is whether they would produce identical results. The purpose of the doctrine is to avoid complicated choice-of-law questions when the answer to those questions would not make a difference. Accordingly, if the various state laws are superficially identical, like many of the statutes at issue in this case, but could produce different results, then it would be inappropriate to employ the false conflict doctrine.
{20} We now proceed to analyze whether this case presents a false conflict, which requires us to first assess the state of the law in the relevant jurisdictions. To do so, we ask (1) is the question of whether the fees constitute premium under the laws of the relevant jurisdictions fairly susceptible to different answers? and (2) has that question been answered in any of those jurisdictions? Because we determine that the question of whether fees constitute premium is susceptible to different answers and has not been answered in any of the jurisdictions, the final step in our analysis is to determine whether one state's law can be said to produce the same result as another state's law where the result under both states' laws is uncertain.
{21} With regard to our first inquiry above, it is clear that the question of whether fees constitute premium could go either way in any of the class states and, in fact, the question could be answered differently in different states. For purposes of discussion, we do not differentiate between the three categories of states we mentioned above (i.e., those that have a statute similar to ours, those that have a different statute, and those that have no statute). As we demonstrate *1029 below, we think that even in states that have the same statute as we do, the question could easily go either way. Likely, the chance of differing outcomes is even stronger with regard to those states that have different statutes or no statute at all. While we do not address the merits of Plaintiffs' breach of contract claim, we note that there are at least two plausible interpretations of the statutory definition of "premium" that could ultimately be employed in a case like this one. On the one hand, a court could find that the fees constitute premium. In the states that have a statute similar to ours, this holding would be possible because the statute specifically references service fees, and even in the other states, a court could find that the fees, as part of the total amount paid to the insurance company, are paid in consideration for insurance. On the other hand, a court could find that the fees are not premium because they are paid in consideration for the privilege of paying in installments, rather than in consideration for insurance.
{22} That this case could go either way in any given jurisdiction is also demonstrated by the fact that the record in this case shows that two New Mexico trial courts in other cases have reached opposite results on the question of whether fees constitute premium. It also appears that two California trial courts have reached opposite results on the same question and that at least one of those cases is now pending before the California Court of Appeals. Finally, the fact that some states, albeit not states proposed to be part of the class, have decided the identical issue contrary to Plaintiffs' position shows that there is genuine doubt about how the issue would be decided in the class states. See, e.g., Blanchard v. Allstate Ins. Co., 774 So.2d 1002, 1006 (La.Ct.App.2000) (indicating that the fees at issue were for the privilege of paying the premium over time); Sheldon v. Am. States Preferred Ins. Co., 123 Wash. App. 12, 95 P.3d 391, 393-94 (2004) (holding there was nothing illegal about charging service fees for installment payments and not including them in the premium, although not deciding whether such fees are or are not "premium").
{23} There is no dispute with regard to our second question above, whether any of the class states have definitively decided that fees do or do not constitute premium in this context. The parties have not cited any cases from any of the class states that address the question.
{24} Thus, we focus our analysis on the third issue, whether different states' laws can be said to produce identical results (and thus create a false conflict) when the result under those laws is uncertain. We rely on three cases. First, we rely on Fioretti v. Massachusetts General Life Insurance Co., 53 F.3d 1228 (11th Cir.1995). In Fioretti, the decedent had fraudulently obtained a life insurance policy. Id. at 1231-32. To get the policy, he had been required to undergo HIV testing but, because he knew he was HIV positive, he submitted blood from someone else, and the test came back negative. Id. at 1231. After his death, the beneficiary attempted to collect on the policy. Id. at 1232-33. The beneficiary argued that the policy's incontestability clause, which stated that the policy would be incontestable after a certain date for any reason except nonpayment, prevented the insurance company from denying coverage. Id. at 1233. Thus, the question in the case was whether there was an "imposter defense" to an incontestability clause. Id. at 1234. The parties agreed that there were three states whose laws could possibly be applicable. Id. at 1233 & n. 18. The district court declined to address the choice-of-law question, determining that there was a false conflict because the laws of all three involved states did not "bar[] proof of imposture" even when there was an incontestability clause. Id.
{25} Rejecting the district court's use of the false conflict doctrine, the Eleventh Circuit stated as follows:
[T]here is presently not a single reported decision from any state court in these jurisdictions addressing this precise legal issue. This fact alone counsels against the district court's treatment of the conflict-of-laws issue presented by this case. In the total absence of any relevant precedent, it becomes necessary to attempt to prognosticate how these state courts would resolve *1030 the "imposter defense" issue. However, without any such precedent it is, quite simply, impossible to say with certainty what the law of these states actually is, not to mention whether these states' laws are identical. Accordingly, we choose not to follow the analytical approach adopted by the district court. Rather, in a case such as this we believe that the more prudent course is for the court to undertake a traditional conflict-of-laws analysis, determine the controlling law, and then attempt to answer the relevant legal question under the law of that state. This approach reduces the likelihood that an error of state law will infect the proceeding, since the court will only be required to interpret the unsettled law of one jurisdiction.
Id. at 1234-35 (citations and footnote omitted). The court further noted that there were prior federal court opinions that answered the question of the imposter defense under the laws of two of the three relevant states, but the court stated that such cases did not "represent[] a definitive answer to these questions of state law." Id. at 1235 n. 23.
{26} We also rely on Dugan v. Mobile Medical Testing Services, Inc., 265 Conn. 791, 830 A.2d 752 (2003). In Dugan, the issue was "whether a medical services provider hired by an employer to conduct a physical examination of an employee owes a duty of care to that employee." Id. at 755. Under the facts of the case, either New York or Connecticut law could potentially have been applicable. Id. at 756. The trial court, relying on several unpublished opinions by Connecticut trial courts, determined that there was a false conflict because Connecticut had adopted New York law on the relevant question. Id. at 756 & n. 8. The Connecticut Supreme Court rejected the trial court's analysis. Id. at 758. The court concluded that, in the absence of any appellate opinions on point, it could not be said that "Connecticut law is the same as New York law with respect to this issue." Id. Accordingly, the court declined to apply the false conflict doctrine and instead proceeded to conduct a choice-of-law analysis. Id.; cf. Seckular v. Celotex, 209 N.J.Super. 242, 507 A.2d 290, 294, 296-97 (Ct.App.Div.1986) (noting that the situation did not present a false conflict because the outcome was not clear under Florida law; deciding to defer to pending litigation in Florida, in part due to the uncertainty in Florida law).
{27} Finally, we rely on Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), which we discuss in more detail later in the opinion. In Shutts, the United States Supreme Court was required to determine whether the laws of various states presented a false conflict regarding liability for interest on suspended royalty payments involving natural gas leases and, if liability existed, what the interest rate should be. 472 U.S. at 814-18, 105 S.Ct. 2965. The Court determined that the conflicts could likely not be considered false. Id. at 818, 105 S.Ct. 2965. The Court noted that Oklahoma had no reported decisions answering the relevant question. Id. at 816-17, 105 S.Ct. 2965. The Court then stated that "whether Oklahoma is likely to impose liability would require a survey of Oklahoma oil and gas law." Id. at 817, 105 S.Ct. 2965. Thus, the Court implied that where the law of a jurisdiction is unclear, a court from another jurisdiction cannot simply rely on the false conflict doctrine and assume that the law of the other jurisdiction is the same as forum law. Rather, the court should engage in an analysis of the other jurisdiction's related precedents to try to ascertain what that jurisdiction would do if faced with the question.
{28} We acknowledge that this case is superficially different from Fioretti and Dugan because in those cases there was absolutely no binding authority from the relevant jurisdictions to guide the court in ascertaining the law of those jurisdictions. In this case, we do have statutes from the majority of the class states. However, because the statutes are susceptible to at least two different interpretations, and because New Mexico courts have no appellate cases from the relevant jurisdictions to tell us which interpretation the other states would favor, we think the principle from Fioretti and Dugan applies. As the court stated in Fioretti, "without any . . . precedent it is, quite simply, impossible to say with certainty what the law *1031 of these states actually is, not to mention whether these states' laws are identical." 53 F.3d at 1235, Also similar to Fioretti, the question of whether New Mexico law would produce the same results as the laws of the other jurisdictions is particularly difficult to answer because none of the states, including New Mexico, has clear law on the subject.
{29} As we have explained above, the statutes in question are fairly susceptible to differing interpretations, and thus we simply cannot tell what the result would be under the laws of the various jurisdictions. Accordingly, we cannot say that the results under New Mexico law would be identical to the results under the laws of the other jurisdictions, and we cannot say that this case presents a false conflict. Rather, as the United States Supreme Court noted in Shutts, the proper course would be to look to analogous or related precedents from the relevant states and try to ascertain what those states would do with regard to the question presented here. Thus, if a New Mexico court were to try to answer the question of whether fees constitute premium under the laws of the various states, the court would be required to examine rules regarding insurance law, contract law, and perhaps public policy to determine how the other states would be likely to rule if faced with the question.
{30} Because there is no false conflict, we hold that New Mexico's statutory definition of premium cannot be applied to the insureds from other states. Accordingly, we must engage in an ordinary choice-of-law analysis.
3. Choice-of-Law Rules as Applied to This Case
{31} We apply New Mexico's choice-of-law rules because no one has argued that they should not be applied. See Scoles, supra, § 3.1, at 120 ("Whenever state, and not federal, law is applicable to a case, the choice of law rule determining which state's law is to be used, ordinarily is a rule of the law of the forum." (footnotes omitted)); id. § 3.13, at 138 ("American law expressly provides for the consideration of foreign conflicts law (renvoi) in only a limited number of specific cases."); see also Blackwell v. Lurie, 2003-NMCA-082, ¶ 9, 134 N.M. 1, 71 P.3d 509 (refusing to apply Missouri's choice of law rules and noting that Missouri law would apply only if it was determined that New Mexico choice-of-law rules pointed to application of Missouri's substantive law). In New Mexico, an insurance contract is governed by the law of the jurisdiction in which the contract was executed, or lex loci contractus. State Farm Mut. Auto. Ins. Co. v. Ballard, 2002-NMSC-030, ¶ 7, 132 N.M. 696, 54 P.3d 537. A litigant can overcome the lex locus contractus rule and persuade a court to apply New Mexico law despite the fact that the contract was executed in another state only where application of the rule would "result in a violation of `fundamental principles of justice.'" Id. ¶ 9 (citation omitted).
{32} Plaintiffs have not argued that there is any policy reason pursuant to which the lex loci contractus rule should be rejected and New Mexico law should be applied, and we see no reason to deviate from our ordinary choice-of-law rules. See Bridgestone/Firestone, 288 F.3d at 1020 (noting that doctrine should not be ignored just to facilitate class treatment). Accordingly, we hold that, if this case is to continue as a multistate class action, Ballard dictates that it must be tried under the law of all thirteen jurisdictions, by examining related law from those jurisdictions as we have described above. Before we address whether the case may proceed in this manner, we address one additional argument made by Plaintiffs.
4. Choice-of-Law Analysis Under the Constitution and Choice-of-Law Analysis Under the Forum's Choice-of-Law Rules
{33} In support of their argument that the district court correctly decided to apply New Mexico law to the entire class, Plaintiffs rely on Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628, and Sun Oil Co. v. Wortman, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). In Shutts, the United States Supreme Court addressed whether the Kansas Supreme Court's decision to apply Kansas law to a multistate class action involving royalties on natural gas leases violated the Full Faith and Credit or Due Process Clauses of the United States Constitution. 472 *1032 U.S. at 799, 105 S.Ct. 2965. The Kansas court had decided to apply Kansas law to all the claims, despite the fact that 99% of the leases and 97% of the class members "had no apparent connection to the State of Kansas." Id. at 814-15, 105 S.Ct. 2965. The Court began by making the following statement: "We must first determine whether Kansas law conflicts in any material way with any other law which could apply. There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." Id. at 816, 105 S.Ct. 2965.
{34} Relying on its decision in Allstate Insurance Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) (plurality opinion), the Court then stated, "`for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" Shutts, 472 U.S. at 818, 105 S.Ct. 2965 (quoting Hague, 449 U.S. at 312-13, 101 S.Ct. 633). The Court determined that because the case involved true conflicts, and because Kansas lacked sufficient contacts with the out-of-state claims, Kansas could not constitutionally apply its own law to all the class claims. Id. at 822, 101 S.Ct. 633.
{35} Wortman was another multistate class action involving royalties on natural gas leases. 486 U.S. at 719, 108 S.Ct. 2117. As in Shutts, the Kansas courts had initially applied Kansas law to all the claims. Wortman, 486 U.S. at 720, 108 S.Ct. 2117. The United States Supreme Court had previously vacated the judgment and remanded for reconsideration in light of Shutts. Wortman, 486 U.S. at 721, 108 S.Ct. 2117. When the case came back to the United States Supreme Court after the remand, the Court framed the defendant's argument regarding choice of law as follows:
In [Shutts], we held that Kansas could not apply its own law to claims for interest by nonresidents concerning royalties from property located in other States. The Kansas Supreme Court has complied with that ruling, but petitioner claims that it has unconstitutionally distorted [the law of the other States.]
Wortman, 486 U.S. at 730, 108 S.Ct. 2117. The Court then set forth the following rule:
To constitute a violation of the Full Faith and Credit Clause or the Due Process Clause, it is not enough that a state court misconstrue the law of another State. Rather, our cases make plain that the misconstruction must contradict law of the other State that is clearly established and that has been brought to the court's attention.
Id. at 730-31, 108 S.Ct. 2117. The Court went on to hold that the Kansas courts had not committed any constitutional errors because those courts' interpretations of the other states' laws were not in contravention of clearly established law from the other jurisdictions that had been brought to the attention of the Kansas courts. Id. at 731-34, 108 S.Ct. 2117.
{36} In this case, Plaintiffs cite Shutts for the false conflict rule. As we have stated above, we have no problem with that rule. We agree with the United States Supreme Court that "[t]here can be no injury in applying [forum] law if it is not in conflict with that of any other jurisdiction connected to this suit." Shutts, 472 U.S. at 816, 105 S.Ct. 2965.
{37} However, we sharply disagree with Plaintiffs' interpretation of Wortman. Plaintiffs argue that "Wortman holds that the law of another state does not `conflict' with the law of the forum state unless it: (1) is clearly established; (2) is plainly contradictory to the law of the forum state; and, (3) has been brought to the trial court's attention." Contrary to Plaintiffs' assertion, Wortman does not say anything about when the laws of two jurisdictions can be said to "conflict." As we stated above, the United States Supreme Court noted that it had ruled that the Kansas courts were required to apply the laws of the other relevant jurisdictions and that the Kansas courts had done so. Wortman, 486 U.S. at 730, 108 S.Ct. 2117. Indeed, the defendant's only complaint with regard to choice of law in Wortman was that the Kansas courts had "unconstitutionally distorted" the laws of the other jurisdictions when it had applied *1033 them. Id. Thus, all Wortman speaks to is a situation where a court of one state, interpreting and applying the law of another state, makes such a grievous error that it has violated the Constitution. If such a situation is argued, the test cited by Plaintiffs and referenced above (involving clearly established law that is brought to the court's attention) should be applied. However, Wortman does not say, as Plaintiffs contend, that two states' laws can be considered to create a false conflict whenever applying forum law would not contravene clearly established law from the other jurisdiction that has been brought to the court's attention.
{38} We also note that Plaintiffs' argument appears to confuse two separate questions: (1) when the choice of a particular jurisdiction's law is permissible in view of the forum's choice-of-law rules and (2) when the choice of a particular jurisdiction's law is constitutionally permissible. These are separate inquiries, the first of which cannot be answered by reference to the United States Supreme Court cases relied on by Plaintiffs. Choice-of-law rules are generally a matter of state law, and the United States Supreme Court has no reason to address them except to the extent that they violate the Constitution or some other federal law. The Court made this much clear when it made the following statement in Hague:
It is not for this Court to say whether . . . we would make the same choice-of-law decision if sitting as the Minnesota Supreme Court. Our sole function is to determine whether the Minnesota Supreme Court's choice of its own substantive law in this case exceeded federal constitutional limitations. Implicit in this inquiry is the recognition, long accepted by this Court, that a set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction.
449 U.S. at 307, 101 S.Ct. 633. See also Shutts, 472 U.S. at 818, 105 S.Ct. 2965 (noting that the Constitution puts "modest restrictions" on the law that a forum may apply); Hague, 449 U.S. at 323, 101 S.Ct. 633 (Stevens, J., concurring) (stating that "the fact that a choice-of-law decision may be unsound as a matter of conflicts law does not necessarily implicate the federal concerns embodied in the Full Faith and Credit Clause"); id. at 332, 101 S.Ct. 633 (Stevens, J., concurring) (stating that "[i]t is not this Court's function to establish and impose upon state courts a federal choice-of-law rule, nor is it our function to ensure that state courts correctly apply whatever choice-of-law rules they have themselves adopted"). It is clear that constitutionality is merely a threshold showing that must be satisfied in every case, and the fact that the choice of a particular law is constitutional has no bearing on whether it is a correct choice in light of the forum's choice-of-law rules.
{39} We do agree with Plaintiffs that if a New Mexico court were to apply New Mexico's statutory definition of premium to plaintiffs from other states, doing so would not run afoul of Wortman. In such circumstances, the court would not be ruling in contravention of the clearly established laws of other jurisdictions because, as we noted above, there is no clearly established law from any of the jurisdictions on the issue of whether fees constitute premium. However, we reiterate that Plaintiffs misstate the proper analysis. The question is not merely whether application of New Mexico law would be constitutional. Rather, the necessary inquiries are whether it would be constitutional to apply New Mexico law and whether it would be proper under New Mexico's choice-of-law rules to do so.
{40} Plaintiffs also appear to argue that Berry, 2004-NMCA-116, 136 N.M. 454, 99 P.3d 1166, interpreted Shutts and Wortman in the way Plaintiffs have suggested, that is, to permit the application of New Mexico law in a multistate class action so long as doing so would be constitutionally permissible. We disagree. In Berry, we clearly acknowledged that Shutts and Wortman set forth a constitutional standard, and not a standard governing ordinary choice-of-law rules. See Berry, 2004-NMCA-116, ¶ 76, 136 N.M. 454, 99 P.3d 1166 (noting that the Constitution "limit[s]" a forum's choice-of-law decisions); id. ¶ 78 ("The forum state cannot simply assume that its law will govern. In this context, conflicts of law are *1034 potentially of constitutional dimension."); id. ¶ 82 (referring to "the constitutional standard of [Shutts] and Wortman"). Moreover, our ultimate holding in Berry was that New Mexico law could be applied classwide because the plaintiffs' breach of contract claim presented a false conflict. Id. ("We simply see no significant variation in the cases[.]"). Thus, Berry did not decide that the choice of a particular jurisdiction's law is proper under our choice-of-law rules just because it is constitutionally permissible. To the extent that any language in Berry or Enfield v. Old Line Life Insurance Co. of America, 2004-NMCA-115, 136 N.M. 398, 98 P.3d 1048, could be read to support such an idea, we disavow that idea. We reiterate that it will always be necessary to first determine whether there is a false conflict. If there is, forum law can be applied classwide. If, however, there is a true conflict, the court must employ New Mexico's ordinary choice-of-law rules, which in a case based in contract, will generally lead to application of all the relevant states' laws.
{41} Finally, we address Plaintiffs' reliance on Sollenbarger v. Mountain States Telephone & Telegraph Co., 121 F.R.D. 417 (D.N.M.1988). Sollenbarger was a seven-state class action alleging antitrust violations in connection with the servicing of telephone wires. Id. at 420. The plaintiffs also asserted a pendent state law claim, alleging that their contracts for the services were void or voidable under a provision of the Restatement (Second) of Contracts that the court concluded had been adopted in New Mexico. Id. at 427-28. The plaintiffs apparently argued that New Mexico contract law could be applied to the claims of all of the plaintiffs. The court set forth what it determined to be the relevant holdings from Shutts and Wortman and concluded that several of the class states had relied on the relevant provision of the Restatement, creating a false conflict with regard to those states. Sollenbarger, 121 F.R.D. at 427-28. The court then noted that there were several class states from which it had found no relevant decisions. Id. at 428. Citing Wortman, the court decided that "[a]n application of plaintiffs' contract law theory to the entire class would not violate the Constitution" because the law in the states that lacked decisions on point was not "`clearly established' or contradictory to the forum state's law." Sollenbarger, 121 F.R.D. at 428. The court also noted that application of the Restatement was not "a radical step" because the Restatement is a widely accepted authority on contract law. Sollenbarger, 121 F.R.D. at 428.
{42} We are not persuaded by Sollenbarger. We think that the federal district court in Sollenbarger made the same mistake that Plaintiffs have made in this case, that is, the court assumed that application of forum law was permissible and appropriate just because it was constitutional. Our sense that the court erred in this manner is confirmed by the fact that, in support of its apparent holding that there is a false conflict when one of the relevant jurisdictions has no law on point, the court only cited Wortman. As we have held above, Wortman does not support that proposition. Accordingly, we reject the analysis in Sollenbarger.
{43} In sum, we reject Plaintiffs' contention that Shutts, Wortman, and Berry support the district court's decision to apply New Mexico law to class members from all of the class states. As we have held above, this case does not present a false conflict and, in the absence of a false conflict, the court must apply the law of all of the involved jurisdictions in accordance with New Mexico's lex loci contractus rule. We now turn to the question of whether this case may proceed as a multistate class action in view of the fact that the court would be required to apply the laws of all the relevant jurisdictions.
5. Application of Law from Thirteen Jurisdictions to a Multistate Class Action
{44} While Plaintiffs' appellate briefing focuses almost exclusively on the false conflict rule, Plaintiffs make a cursory argument that the case could still proceed as a multistate class action even if the laws of all the jurisdictions must be applied. Accordingly, we will briefly address that possibility.
{45} Rule 1-023(B)(3) states that the type of class action addressed in that subdivision of the rule can be maintained only where the *1035 court finds that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The rule then lists four factors that are pertinent to the predominance and superiority inquiries. Berry, 2004-NMCA-116, ¶ 79, 136 N.M. 454, 99 P.3d 1166, states that the fact that a court will have to apply the laws of different jurisdictions implicates two of those factors: Rule 1-023(B)(3)(c), which states that a court should consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and Rule 1-023(B)(3)(d), which states that a court should consider "the difficulties likely to be encountered in the management of a class action." As we noted in Berry,
The more different laws are applicable, the more difficult it will be to say that common issues of law apply. On a practical level, the more variations in law there are, the more difficult it will be to conduct the trial. At some point  we cannot say where  the likely confusion to the jury of considering different jury instructions reflecting different laws becomes unmanageable and unfair.
2004-NMCA-116, ¶ 79, 136 N.M. 454, 99 P.3d 1166.
{46} We also noted in Berry that where different laws will need to be applied, it is the plaintiffs' burden to "provide the district court with a plan for managing the differences through trial." Id. ¶ 80. Here, Plaintiffs have focused their efforts almost entirely on arguing the false conflict doctrine and have not made any suggestions regarding how the court could go about managing a suit in which the laws of different states had to be applied.
{47} We think it is clear that common questions of law would not predominate and the case would become unmanageable if the district court were to attempt to apply the ambiguous laws of all thirteen jurisdictions. It is very common for a court to decline certification or decertify a class on the ground that the need to apply different states' laws would prevent the case from satisfying the manageability, superiority, and predominance requirements. See 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780.1, at 204-13 (3d ed.2005) (citing numerous cases where certification was denied due to the need to apply different laws). We think the difficulties are exponentially magnified where, as here, the district court would need to make detailed inquiries into analogous precedents to try to guess what the courts of each of the class states would do if faced with the question of whether fees constitute premium. See Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 679-81 (Tex.2004) (reversing certification order on the basis of variations in state law; noting that class treatment is particularly undesirable where the court will have to "guess" what the law of other jurisdictions is). Accordingly, we hold that the need to apply the ambiguous laws of the other class states would render this case unmanageable and not superior as a matter of law. We now address whether Allstate may argue against certification as to New Mexico insureds in the future.
6. Allstate's Right to Argue Against Certification of a New Mexico-Only Class
{48} In its brief in chief, Allstate included a footnote stating, "Allstate does not concede that certification of a single-state, New Mexico-only class would be appropriate, but this appeal focuses specifically on the erroneous multistate certification." The brief in chief makes no further mention of the propriety of the district court's certification of the class with regard to New Mexico insureds. The brief in chief is devoted solely to the choice-of-law issue and does not contest any of the other requirements of Rule 1-023.
{49} In the answer brief, Plaintiffs argue that under the law of the case doctrine, Allstate is prevented from arguing the propriety of certification with regard to New Mexico insureds on remand or in any subsequent appeal. Allstate does not respond to this argument in its reply brief. Under these circumstances, we can hold in Plaintiffs' favor without analyzing the issue. See Delta Automatic Sys., Inc. v. Bingham, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 *1036 P.2d 1174 (noting that the failure to respond to contentions made in the answer brief "constitutes a concession on the matter" and stating that "[t]his Court has no duty to search the record or research the law to `defend' in a civil case a party that fails to defend itself on an issue").
{50} Moreover, with one caveat noted below, we basically agree with Plaintiffs that it is fair to require parties appealing under Rule 1-023(F) to raise all issues pertaining to certification or waive them. Brief research has revealed a plethora of cases that hold that a trial court, as well as an appellate court in any subsequent appeal, should refuse to consider issues that could have been raised in a prior appeal but were not. See, e.g., DiMatteo v. County of Doña Ana, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct.App.1989) (noting that under the law of the case doctrine, "the law applied on the first appeal of a case is binding on the trial court on remand and on the appellate court if there are further appeals" and that "the doctrine extends not only to questions raised upon the former appeal[,] but also to those that could have been raised"); see also Fed'n of Adver. Indus. Representatives, Inc. v. City of Chicago, 326 F.3d 924, 929 (7th Cir.2003) ("Under the doctrine of the law of the case, a ruling by the trial court, in an earlier stage of the case, that could have been but was not challenged on appeal is binding in subsequent stages of the case." (internal quotation marks and citation omitted)); Concrete Works of Colo., Inc. v. City & County of Denver, 321 F.3d 950, 992-93 (10th Cir.2003) (citing Capps, 13 F.3d at 353, for the rule regarding refusing to consider issues that were not raised in a prior appeal and stating that "[o]ther circuit courts of appeal have recognized that this rule is necessary to the orderly conduct of litigation and ensures that a party which fails to challenge a ruling in a first appeal does not stand better as regards the law of the case than one who had argued and lost" (internal quotation marks and citations omitted)); Capps v. Sullivan, 13 F.3d 350, 353 (10th Cir.1993) ("[A] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." (internal quotation marks and citation omitted)); Munoz v. County of Imperial, 667 F.2d 811, 817 (9th Cir.1982) (refusing in a second appeal to consider whether the elements of a preliminary injunction were satisfied where the defendant had not raised that issue in a prior, interlocutory appeal, and instead had argued in the prior appeal only that the Anti-Injunction Act (28 U.S.C. § 2283) precluded issuance of a preliminary injunction; stating that "[w]e need not and do not consider a new contention that could have been but was not raised on the prior appeal"); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.6 (2d ed.2002) (approving of the rule that a court should not consider issues that should have been raised in a prior appeal and citing cases, but noting that "the law of the case" is perhaps not the best way to describe the rule).
{51} Here, in addition to concluding that New Mexico law could be applied classwide, the district court's order certifying the class states that all of the elements of Rule 1-023 are satisfied. As noted, Allstate's appeal contests only the district court's choice-of-law ruling and does not contest the district court's ruling that the elements of Rule 1-023 are satisfied. We think it might be inefficient and potentially unfair to allow Allstate to later contest other portions of that same order. Given the small size of the service fees at issue in this case, it is apparent that the case would be highly unlikely to proceed if certification were denied altogether. Accordingly, if we were to remand and the district court were to find for Plaintiffs on the merits, and then it was later determined that certification as to New Mexico insureds had been improper because elements of Rule 1-023 were not satisfied, Plaintiffs and their counsel would have wasted an enormous amount of time and resources on a case that was worth practically nothing.
{52} On the other hand, we note that the district court always retains the authority to alter a certification order or decertify a class. See Rule 1-023(C)(1) ("An order under this subparagraph [i.e., a certification order] . . . may be altered or amended *1037 before the decision on the merits."); Romero v. Philip Morris Inc., 2005-NMCA-035, ¶ 98, 137 N.M. 229, 109 P.3d 768 ("If the court has second thoughts on any issue, it can reconsider and either decertify or modify certification if the manageability of damages adjudication or distribution proves to be an intolerable burden on the judicial system or otherwise proves to create a situation that is less fair and efficient than other available techniques."). Because class actions are often complex and difficult, and because the stakes are often high, it is especially important for district courts to have the flexibility to adjust their rulings as the changing circumstances of a case dictate. See Fraley v. Williams Ford Tractor & Equip. Co., 339 Ark. 322, 5 S.W.3d 423, 439 (1999) ("`The ability of a court to reconsider its initial class rulings . . . is a vital ingredient in the flexibility of courts to realize the full potential benefits flowing from the judicious use of the class device.'" (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 7.47 (3d ed.1992))).
{53} Given the flexibility that is built into our class action rule, we are hesitant to hold that the district court is precluded from ever reconsidering its certification decision. However, the principles of judicial economy and fairness to Plaintiffs that we have articulated above counsel against unfettered reconsideration of certification as to New Mexico insureds. Accordingly, we think that the district court should be free to reconsider its certification ruling, but that it should exercise the requisite caution commensurate with considerations of efficiency and fairness.
CONCLUSION
{54} We reverse the portion of the district court's order that certified the class with respect to out-of-state plaintiffs, and we remand for the case to proceed as a class action on behalf of the New Mexico insureds if the district court still believes it is appropriate to do so.
{55} IT IS SO ORDERED.
WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.