2008-NMSC-042

188 P.3d 1156

Joan **FERRELL, Maria C. Cappuzzello, Elizabeth Martinez, and H. Jake Salazar, Plaintiffs–Petitioners,**

v.

**ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Defendants–Respondents.**

No. 30,165.

Supreme Court of New Mexico.

June 6, 2008.

Rehearing Denied July 17, 2008.

Freedman, Boyd, Hollander, Goldberg & Ives, P.A., David Alan Freedman, Joseph Goldberg, Alexandra Freedman Smith, Martha E. Mulvany, Karen S. Mendenhall Eaves & Mendenhall, P.A., John M. Eaves, McCary, Wilson & Pryor, Floyd D. Wilson, Dennis M. McCary, Alan Karl Konrad, Wilson Law Firm, P.C., Alan R. Wilson, Peifer, Hanson & Mullins, P.A., Charles R. Peifer, Robert E. Hanson, Albuquerque, NM, Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P., John Stoia, Len Simon, Tim Blood, San Diego, CA, for Petitioners.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, Sonnenschein, Nath & Rosenthal, L.L.P., Jeffrey Lennard, Mark L. Hanover, Chicago, IL, for Respondents.

Miller Stratvert, P.A., Ann Maloney Conway, Deron Bradley Knoner, Albuquerque, NM, for Amicus Curiae Property Casualty Insurers Association of America.

Mayer, Brown, Rowe & Maw, L.L.P., George Ruhlen, Santa Fe, NM, for Amicus Curiae American Council of Life Insurers.

Miller Stratvert, P.A., Ruth Fuess, Albuquerque, NM, for Amicus Curiae Chamber of Commerce of the United States of America.

Simone, Roberts & Weiss, P.A., Randal William Roberts, Albuquerque, NM, for Amici Curiae Offices of Insurance Regulation.

## OPINION

BOSSON, Justice.

{1} The issues raised by this appeal involve the intersection of two complex areas of law—multi-state class action lawsuits and conflict-of-laws principles. We hold that the correct standard for determining when an actual conflict exists between states' laws such that application of the forum state's law is inappropriate for a class action is more than a mere hypothetical conflict or uncertainty based on the lack of foreign appellate precedent. Rather, proof of an actual conflict is required. Having so concluded, we reverse the Court of Appeals and remand for proceedings consistent with this Opinion.

## BACKGROUND

{2} This appeal arises as a result of the district court's decision to certify a multi-state class in New Mexico for the purposes of litigating a class action lawsuit against Allstate Insurance Company (Allstate). Plaintiffs are Allstate insureds who contend that Allstate is liable for breach of contract for failing to include installment fees that are charged when an insured opts to pay the premium in monthly installments in the total premium calculation. Allstate counters that the installment fees are not part of the premium; instead, the fees are imposed when an insured chooses to pay the policy in installments rather than in one lump sum.[1]

{3} Plaintiffs originally requested that the district court certify a nationwide class, but eventually narrowed the class to fifteen states, including New Mexico. The district court, in its Findings of Fact and Conclusions

---

1. Plaintiffs acknowledge that the underlying issue in this case may, in fact, be moot based on the Court of Appeals' recent decision in *Nakashima v. State Farm Mutual Automobile Insurance Co.*, 2007–NMCA–027, 141 N.M. 239, 153 P.3d 664, *cert. denied*, 2007–NMCERT–003, 141 N.M. 401, 156 P.3d 39. Despite the similarities between *Nakashima* and this appeal, Plaintiffs believe that their facts are distinguishable from *Nakashima*. Class certification, however, is not the appropriate time to decide the merits of a case. *See Berry v. Fed. Kemper Life Assurance Co.*, 2004–NMCA–116, ¶ 51 n. 2, 136 N.M. 454, 99 P.3d 1166. Because the validity of class certification is the only issue on appeal, we do not reach the question of mootness.

of Law, certified a class of thirteen states and found that there was no conflict among the laws of the thirteen states such that application of New Mexico law to the plaintiffs from those states was appropriate. The district court declined to certify the plaintiffs from either Hawaii or Washington because, unlike the policies from the other thirteen states, the insurance policies issued in those states contained specific information about installment fees. The district court "retain[ed] jurisdiction to create subclasses or otherwise alter or amend [the certification order] before a decision on the merits." Allstate appealed the class certification to the Court of Appeals pursuant to Rule 1–023(F) NMRA, which permits the Court of Appeals to hear an appeal arising from an order granting or denying certification of a class.

{4} The Court of Appeals first reviewed the laws of the states connected to the dispute and determined that the laws of the thirteen states potentially conflicted with one another, due to unresolved ambiguities in each state's law. *Ferrell v. Allstate Ins. Co.*, 2007–NMCA–017, ¶ 29, 141 N.M. 72, 150 P.3d 1022. Based upon this conclusion, the Court determined it would be inappropriate to apply New Mexico law to the entire multi-state class. *Id.* ¶ 30. Having determined that New Mexico law could not apply to the entire class, the Court undertook a conflict-of-laws analysis and determined that the laws of the state where each insurance contract was entered into would separately apply to the plaintiffs from that state. *Id.* ¶¶ 31–47. In other words, if the multi-state class action were to proceed, the district court would have to apply the laws of each of the thirteen states connected to the dispute. *Id.* ¶ 47. Because the "need to apply the ambiguous laws of the other class states would render [the] case unmanageable and not superior as a matter of law," *id.* ¶ 47, the Court of Appeals decertified the class with respect to all out-of-state class members, *id.* ¶ 54. The Court of Appeals affirmed the certification with respect to New Mexico class members only, and remanded the case to the district court to proceed as a single-state class action, subject to the district court's discretion. *Id.* We granted certiorari to review significant, novel issues relevant to New Mexico

class action jurisprudence that are implicated in the Court of Appeals opinion.

## DISCUSSION

{5} The district court's certification was appropriate if the court properly considered the requirements of our class action rule, portions of which can only be satisfied in a multi-state class action by considering conflict-of-laws principles. We begin our discussion with an overview of our class action rule, which forms the backdrop of this appeal. We then discuss the Court of Appeals' determination that the laws of the thirteen states connected to this dispute conflicted. In so doing, we consider as a vital threshold inquiry whether the class proponent has the burden of affirmatively disproving a hypothetical conflict between the laws of the relevant states, as the Court of Appeals held, or whether the party opposing certification has the burden of affirmatively proving that the laws of the relevant states actually conflict.

### Class Actions in General

{6} To put our discussion in context, we set out the relevant portions of our class action rule, Rule 1–023(A) and (B):

A. **Prerequisites to a class action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

B. **Class actions maintainable.** An action may be maintained as a class action if the prerequisites of Paragraph A of this rule are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

{7} New Mexico's current class action rule mirrors the federal rule upon which it is based. *Compare* Rule 1–023, *with* Fed. R.Civ.P. 23; *see also Berry*, 2004–NMCA– 116, ¶ 27 (noting that Rule 1–023 is "[i]dentical to its federal counterpart"). Thus, we may seek guidance from federal law applying the rule. *Accord Romero v. Philip Morris Inc.*, 2005–NMCA–035, ¶ 35, 137 N.M. 229, 109 P.3d 768.

■■■ {8} The district court certifies a class in the first instance. Rule 1–023(C)(1) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained."). The court "must engage in a rigorous analysis of whether the Rule's requirements have actually been met." *Brooks v. Norwest Corp.*, 2004–NMCA–134, ¶ 9, 136 N.M. 599, 103 P.3d 39. In deciding whether the requirements of Rule 1–023 have been met, a district court may look beyond the pleadings. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). "This 'probe behind the pleadings' is necessary because the district court must understand the elements of the plaintiffs' causes of action— and the likely defenses—in order to assess what kind of proof will be necessary to decide the issues." *Berry*, 2004–NMCA–116, ¶ 50; *accord Castano*, 84 F.3d at 744. The district court may certify a class only for certain issues or may divide the class into subclasses. Rule 1–023(C)(4). Because, in this case, the district court's decision to certify the class was appropriate only if the class met the requirements of Rule 1–023(A) and the requirements of at least one of the subdivisions of subsection B of Rule 1–023, we now turn to a discussion of those sections of our class action rule.

## Rule 1–023(A): Prerequisites to a Class Action

{9} Rule 1–023(A) lists four prerequisites to certification of a class action:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Berry*, 2004–NMCA–116, ¶ 40; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (same). In this case, the district court concluded that the class met the four requirements of Rule 1–023(A). Neither party appealed this finding, and the Court of Appeals did not address it. Therefore, we assume, without deciding, that the four threshold requirements of Rule 1–023(A) were satisfied.

## Rule 1–023(B): Class Actions Maintainable

■■■ {10} In addition to meeting all of the threshold requirements of Rule 1–023(A), a district court may only certify a class if the class meets the requirements of one of the categories contained in Rule 1–023(B). *See* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:1, at 210 (4th ed.2002). Of the three categories of Rule 1–023(B), only subsection (B)(3) is relevant to this appeal because it is the category that generally applies when class members seek monetary damages. *See* Rory Ryan, Comment, *Uncertifiable?: The Current Status of Nationwide State–Law Class Actions*, 54 Baylor L.Rev. 467, 472 (2002) ("As a practical matter, nationwide state-law class actions seeking damages invariably will be brought under Rule 23(b)(3)."). Rule 1–023(B)(3) provides that a class action is maintainable only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." " 'Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as

to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" 1 Conte & Newberg, *supra*, § 3:1, at 214 (quoting Rules Advisory Committee to 1966 Amendments to Rule 23); *accord Berry*, 2004–NMCA–116, ¶ 47.

{11} The requirements contained in subsection (B)(3) are commonly referred to as predominance and superiority. Our class action rule does not define predominance and superiority, but the rule contains several factors to consider when making a determination about whether predominance and superiority have been met. Those relevant factors include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

Rule 1–023(B)(3).

{12} Class actions involving plaintiffs from multiple states present particular challenges for district courts, and may "implicate the predominance and superiority requirements ... because of the combination of individual legal and factual issues that need to be determined." 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1780.1, at 202 (3d ed.2005). If too many separate state laws must be applied, then the class proponent may have a difficult time persuading the district court that common questions of law predominate and that a class action is the superior method of litigation. *See Castano*, 84 F.3d at 741 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."). A determination that the district court will have to apply the laws of multiple states also impacts the court's ability to manage the proposed class. *See* Rule 1–023(B)(3)(d); *Berry*, 2004–NMCA–116, ¶ 51 ("[I]f the forum state decides to apply the law of other

states, the court must consider the difficulty of managing the trial of sub-classes to the same jury."); 7AA Wright et al., *supra*, § 1780.1, at 211 ("[C]ourts also have found that the class device is not a superior method to adjudicate the claims [of a multi-state class] because differences in state law make the action unmanageable.").

{13} A decision to apply the laws of several states does not, however, necessarily foreclose class certification. A court may be able to manage a class through the use of subclasses or by grouping certain issues together that can be resolved by applying one state's law. *See In re Sch. Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir.1986) (affirming class certification under Rule 23(b)(3) because, even though "manageability [was] a serious concern, ... [m]anageability is a practical problem, one with which the district court generally has a greater degree of expertise and familiarity than does an appellate court").

{14} Thus, a certifying court must first determine which law will apply to the class so that it can then assess the predominance and superiority of the proposed class action. *See Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 103 Cal.Rptr.2d 320, 15 P.3d 1071, 1077 (2001) ("Discerning the applicable law is an important task in class actions, for if the claims of nonresident class members will require adjudication under the laws of the members' home states, the trial court must ascertain the degree of complexity arising from the need to apply those laws in order to make an informed decision on certification."). Plaintiffs bear the initial burden of producing evidence of the various states' laws and demonstrating "'that class certification does not present insuperable obstacles.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C.Cir.1986) (quoting *In re Sch. Asbestos Litig.*, 789 F.2d at 1010). If the defendant wishes to contest the plaintiff's characterization of the laws of the relevant states, the defendant must "inform the district court of any errors they perceive." *Berry*, 2004–NMCA–116, ¶ 80. If the defendant fails to bring any "'clearly established' contradictory law" to the court's attention, the district court cannot be faulted if it concludes that the laws of the jurisdictions connected to the dispute do not conflict such

that a single state's law may be applied to the entire class. *Id.* (quoting *Sun Oil Co. v. Wortman,* 486 U.S. 717, 730–31, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988)).

{15} In this case, the district court's decision to certify the class was proper if the district court correctly determined that New Mexico law applied to the entire class. A district court's choice to apply forum law is appropriate if (1) the choice to apply forum law is constitutional or (2) an application of the forum's choice-of-law rules leads to the selection of forum law. A forum's choice to apply its own law is constitutional if the law of the forum does not actually conflict with the law of any other jurisdiction connected to the dispute. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 816, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) ("There can be no injury in applying [forum] law if it is not in conflict with that of any other jurisdiction connected to this suit."). Additionally, a forum's choice to apply its own law is constitutional, even if the laws of the states connected to the dispute actually conflict, if the forum state has " 'a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " *Id.* at 818, 105 S.Ct. 2965 (quoting *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)). The parties to this appeal have focused their arguments on whether the Court of Appeals correctly found an actual conflict between New Mexico law and the laws of the other twelve states. We will concentrate our analysis in a similar fashion.

## Conflict–of–Laws

{16} The Court of Appeals in this case adopted the "false conflict" doctrine as the initial step that a district court must undertake when making the determination about what law applies to the claims of a multi-state class.[2] *Ferrell,* 2007–NMCA–017, ¶ 40. Under this analysis, when the laws of the relevant states do not actually conflict, the court may avoid a conflict-of-law analysis and may apply forum law to the entire class. *See Phillips,* 472 U.S. at 816, 105 S.Ct. 2965 ("We must first determine whether [forum] law conflicts in any material way with any other law which could apply. There can be no injury in applying [forum] law if it is not in conflict with that of any other jurisdiction connected to this suit."). If, however, the laws of the relevant states actually conflict, or if the laws of certain of the relevant states conflict, then the forum court must resolve that conflict using the choice-of-law rules contained in the forum state's conflict-of-laws doctrine. *See Ferrell,* 2007–NMCA–017, ¶ 40.

{17} A district court's conclusion that the laws of the various states do not actually conflict is particularly important in multi-state class actions. If the law of a single state can be applied to the entire class, it is more likely that the class will meet the predominance and superiority requirements of our class action rule. The converse is true as well. If the laws of the states connected to the dispute actually conflict, and if the court's choice-of-law analysis provides that the laws of several states must apply to the class, then it is less likely that the class will meet the certification requirements.

## When can the laws of the interested states be said to actually conflict such that application of forum law is inappropriate?

{18} In the instant appeal, the Court of Appeals concluded that a district court may

---

**2.** We use the term "actual conflict" throughout this Opinion, rather than the term "false conflict" used by the Court of Appeals, because "false conflict" actually has two different meanings. *See* Robert A. Leflar et al., *American Conflicts Law,* § 92, at 270 (4th ed.1986). The first meaning of "false conflict" arises from the choice-of-law method advanced by Professor Brainerd Currie, "the governmental interest" analysis. *Id.* at 270–71. Under Currie's method, a false conflict arises when "only one of the involved states would be interested in applying its law." Eugene F. Scoles et al., *Conflict of Laws* § 2.9, at 28 (4th ed.2004). The second meaning of the term "false conflict" is "no conflict of laws." Leflar et al., *supra,* § 92, at 272. The analysis undertaken by the Court of Appeals is consistent with the "no conflict of laws" approach, rather than the governmental interest analysis approach. To avoid any confusion, we use the term "actual conflict" throughout this Opinion when referring to the "no conflict of laws" approach.

only apply forum law to class members from other states if the laws of the states connected to the dispute " 'are identical, or different, but produce *identical* results.' " *Ferrell,* 2007–NMCA–017, ¶ 9 (emphasis added) (quoting Scoles et al., *supra,* § 2.9, at 28 n. 16). While acknowledging the apparent similarities among the states' laws, the Court of Appeals was nevertheless troubled because "[n]one of the class states [had] appellate court opinions interpreting the statutory definition of premium or otherwise deciding whether fees constitute premium in the context of a breach of contract issue." *Id.* Despite the lack of evidence that the difference in state law would actually influence the outcome of a trial on the merits, the Court of Appeals concluded that where the laws of the relevant states "*could* produce different results," *id.* ¶ 21 (emphasis added), it would be inappropriate to apply New Mexico law to the entire class, *id.* ¶ 30.

{19} The Court limited its analysis to a comparison of the statutory definition of premium, *id.* ¶¶ 16–17, and to the issue of whether fees constitute premiums, *id.* ¶¶ 20–30. The Court noted that six states "have a statutory definition of 'premium' that is materially the same as the definition found in New Mexico's Section 59A–18–3." *Id.* ¶ 17. The Court further stated that three states "have statutes that essentially define premium as 'the consideration for insurance' but do not provide the list of examples that New Mexico's statute does." *Id.* And, while three states did not have a statutory definition of premium, the Court acknowledged that two of those states had appellate opinions "holding that fees charged by insurance companies for the privilege of paying in monthly installments constitute 'gross premium' for purposes of statutory or constitutional provisions that require insurance companies to pay taxes on the 'gross premiums' collected." *Id.* (citing *Allstate Ins. Co. v. State Bd. of Equalization,* 169 Cal.App.2d 165, 336 P.2d 961 (1959), and *State ex rel. Earle v. Allstate Ins. Co.,* 221 Or. 371, 351 P.2d 433 (1960)).

{20} Relying on *Berry,* 2004–NMCA–116, and *Sun Oil,* 486 U.S. 717, 108 S.Ct. 2117, Plaintiffs argue that the Court of Appeals "applied a substantially higher burden for certification of multi-state class actions" when it held that a New Mexico court may only apply New Mexico law to class members from other states when the law of the other states can be shown to produce identical results. Rather than requiring identical results, Plaintiffs argue that they need only demonstrate that the laws of the states connected to the dispute are substantially similar. Importantly, a New Mexico court need not wait for an appellate decision construing the particular statute in question. Rather, the forum court should only consider the laws of the relevant states in their current form; it should not be required to speculate on the form those laws may take in the future. Finally, Plaintiffs argue that, even where the law is uncertain, a district court may nevertheless apply New Mexico law under certain circumstances.

{21} The question before us, then, is whether an actual conflict exists when the laws of the other states *could* hypothetically produce different results or whether an actual conflict requires a showing of something more. In answering that question, we examine whether the uncertainty created by the lack of appellate precedent necessarily creates an actual conflict. We also consider who must demonstrate the existence of an actual conflict and who carries the burden of failing to prove that an actual conflict exists.

{22} We begin our discussion with *Phillips* and *Sun Oil,* two U.S. Supreme Court cases relied upon by Plaintiffs in this appeal, before turning our attention to Plaintiffs' arguments premised on *Berry,* a case similar to *Ferrell,* involving appellate review of a district court's decision to certify a multi-state class. In *Phillips,* the U.S. Supreme Court reviewed the constitutionality of the Kansas court's decision to apply principles of Kansas law to the claims of a multi-state class. 472 U.S. at 815–23, 105 S.Ct. 2965. As discussed above, the Court held that a court may apply forum law when that law does not "conflict[ ] in *any material way* with any other law which could apply." *Id.* at 816, 105 S.Ct. 2965 (emphasis added). Alternatively, the forum court may apply its own state law, even if forum law conflicts with the laws of the other states connected to the dispute, as

long as the forum has " 'a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " *Id.* at 818, 105 S.Ct. 2965 (quoting *Allstate Ins. Co.,* 449 U.S. at 312–13, 101 S.Ct. 633). "Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822, 105 S.Ct. 2965. Having so concluded, the Supreme Court reversed the Kansas court's decision to apply Kansas law and remanded the case for the Kansas court to apply the laws of the other states connected to the dispute. *Id.* at 823, 105 S.Ct. 2965; *see also Sun Oil,* 486 U.S. at 721, 108 S.Ct. 2117 ("We reversed that part of [*Phillips* ] which held that Kansas could apply its substantive law to claims by residents of other States concerning properties located in those States, and remanded that case to the Kansas Supreme Court for application of the governing law of the other States to those claims.").

{23} In *Sun Oil,* the U.S. Supreme Court had the opportunity to review how the Kansas court complied with the constitutional mandates set forth in *Phillips. Sun Oil,* 486 U.S. at 730–34, 108 S.Ct. 2117. The Kansas court in *Sun Oil* again chose to apply principles of Kansas law to the entire class to determine the prejudgment interest rate with respect to the plaintiffs' claim for royalties. *See Sun Oil,* 486 U.S. at 722, 108 S.Ct. 2117 (stating that the U.S. Supreme Court was reviewing the Kansas court's "decision that the other States' pertinent substantive legal rules were consistent with those of Kansas"); *see also Wortman v. Sun Oil Co.,* 241 Kan. 226, 755 P.2d 488, 490 (1987) (district court reviewed the laws of the other states connected to the dispute and concluded that " '[t]he laws of the other states do not conflict with the laws of Kansas on the interest rate to be used' " (quoting district court's holding)). On appeal, to the U.S. Supreme Court, the defendant-oil company argued that the Kansas trial court had "unconstitutionally distorted" the laws of the other states when it concluded that the laws of

those states did not materially conflict with the law of Kansas. *Sun Oil,* 486 U.S. at 730, 108 S.Ct. 2117.

{24} The U.S. Supreme Court acknowledged that the statutes of the relevant states were facially different, yet upheld the Kansas court's decision to apply Kansas law to determine the prejudgment interest rate for the entire class. *Id.* at 731–34, 108 S.Ct. 2117. The oil company had failed to present the court with any clearly established case law demonstrating that, under similar circumstances, the other states would apply their state's statutory rate, rather than the rate chosen by the Kansas court. *Id.* The U.S. Supreme Court held that the Kansas court's interpretation of unsettled law was valid, even though the highest court of a sister state had yet to rule on the issue. *See id.* at 731 n. 4, 108 S.Ct. 2117 (relying on a previous opinion where the Court had stated that "[t]here was neither allegation nor proof that the court of last resort in Louisiana had considered the question or made any ruling upon it, and so it became the duty of the Texas courts … to decide the question according to their independent judgment" (quoted authority omitted)); *see also Berry,* 2004–NMCA–116, ¶ 78 (relying on *Phillips* and *Sun Oil* for the proposition that "the forum court [is not] required to try to match or divine the result of the case as if it were being decided in the other states"). Additionally, the Supreme Court noted that simply because a forum court must interpret the laws of a sister state does not necessarily mean that the forum court is foreclosed from applying forum law, if the court interprets that law to be similar to the forum law. *See Sun Oil,* 486 U.S. at 732–33, 108 S.Ct. 2117 (noting that the Kansas court was called upon to interpret a Texas appellate court decision and, in so doing, distinguished that case from the case at bar based on the "eminently reasonable ground" that the disputes did not involve the same legal claim).

{25} We now turn to a discussion of *Berry,* which Plaintiffs cite as additional support for their position that they only need to demonstrate that the laws of the relevant states are substantially similar. In *Berry,* the district court certified a nationwide class seeking

damages against a life insurance company based on breach of contract and breach of the duty of good faith. 2004–NMCA–116, ¶ 1. In its conflict-of-laws analysis, the *Berry* court relied on *Phillips* and *Sun Oil* as a framework for determining whether the district court appropriately considered the differences between the laws of the various states when it decided to apply New Mexico law to the claims of the entire multi-state class. *Berry,* 2004–NMCA–116, ¶¶ 76–78, 82. From those cases, the *Berry* Court distilled several overarching principles that a court should consider when making a determination about whether a conflict exists.

{26} The Court noted that, as an initial step, "courts dealing with multistate class actions must consider and evaluate how the laws of other states apply to the class claims." *Id.* ¶ 78. While "[t]he forum state cannot simply assume that its law will govern[,] ... the forum court [is not] required to try to match or divine the result of the case as if it were being decided in the other states. The forum court is only bound by 'clearly established' law brought to its attention." *Id.* (quoted authority omitted). After setting forth these general principles, the Court then utilized them to analyze the plaintiffs' claims arising under both breach of contract, *id.* ¶¶ 82–88, and breach of good faith and fair dealing, *id.* ¶¶ 89–94.

{27} With respect to the breach of contract claim, the *Berry* court focused on the significance of the demonstrated conflicts, not on potential conflicts. Rather than requiring an affirmative showing that the laws would produce identical results, the court noted that "the law in this area [was] *uniform enough,*" there was "*no significant variation*" in the cases from the standard approach to interpretation of insurance contracts," *id.* ¶ 82 (emphasis added), and there were "no *fatal* contradictions of law," *id.* ¶ 87 (emphasis added). Significantly, the *Berry* court rejected the defendant's argument that it would be improper to apply New Mexico law to the entire class because a determination of "whether the policy would be deemed ambiguous 'could' vary from state to state." *Id.* ¶ 88.

{28} The *Berry* court rejected this argument for two reasons, which we find persuasive. *Id.* First, the court noted that the district court had yet to decide that an ambiguity existed. *Id.* Second, the court stated that it saw "no significant variation among the states concerning how [the] decision [about ambiguity] is made." *Id.* Thus, the court rejected the defendant's argument—that the laws could potentially produce different results—because "there is no need to forecast how the inquiry would actually be resolved in any other court because the case is here, and the decision is to be made here in accordance with reasonably uniform rules." *Id.* Because the laws of the relevant states were sufficiently uniform to allow the application of New Mexico law, the Court affirmed the district court's certification decision with respect to the breach of contract claim. *Id.* ¶ 102.

{29} The *Berry* court's discussion of the breach of good faith and fair dealing claim is illustrative of the level of proof required by a defendant to establish that an actual conflict exists. *See id.* ¶¶ 89–94. In its analysis, the court relied on actual variations among the laws of certain states in making the determination that the laws of the various states were not sufficiently uniform to apply New Mexico law. *Id.* ¶¶ 90–94. Significantly, the defendant cited established cases from the class states with holdings that were contrary to New Mexico law. *Id.* Because the laws of the states were not sufficiently uniform, the court decertified the class with respect to the breach of good faith and fair dealing claim. *Id.* ¶ 94.

{30} Having reviewed both *Ferrell* and *Berry,* it is clear that the two New Mexico Court of Appeals' opinions set forth conflicting standards for what constitutes an actual conflict. Plaintiffs argue that *Berry* and *Sun Oil* set forth rules that a court should follow when determining whether the laws of the states connected to the dispute can be said to conflict. The *Ferrell* court disagreed and did not rely on *Sun Oil* for what constitutes an actual conflict, because that court concluded that *Sun Oil* "does not say anything about when the laws of two jurisdictions can be

said to 'conflict.' " *Ferrell*, 2007–NMCA–017, ¶ 37.

{31} Because the court was not persuaded that *Sun Oil* applied, the Court of Appeals turned to two non-class action cases from other jurisdictions for guidance. *Ferrell*, 2007–NMCA–017, ¶¶ 24–26. In both *Fioretti v. Massachusetts General Life Insurance Co.*, 53 F.3d 1228 (11th Cir.1995) and *Dugan v. Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 830 A.2d 752 (2003), the appellate courts criticized the district court's determination that the laws of the relevant states did not actually conflict for many of the reasons voiced by our Court of Appeals in this case: " '[W]ithout any … precedent it is, quite simply, impossible to say with certainty what the law of these states actually *is*, not to mention whether these states' laws are identical.' " *Ferrell*, 2007–NMCA–017, ¶ 28 (quoting *Fioretti*, 53 F.3d at 1235) (second alteration in original); *see also Fioretti*, 53 F.3d at 1234–35 (concerned by lack of appellate precedent); *Dugan*, 830 A.2d at 758 (same).

{32} Despite the procedural similarities with the instant appeal, we do not find these opinions particularly helpful. First, the facts of *Ferrell* are distinguishable from *Fioretti* and *Dugan* because in those two cases there was no binding authority, whereas in the instant appeal a majority of the relevant states have statutes defining premium, some of which are identical to the New Mexico statutory definition, while others vary only slightly. *See Ferrell*, 2007–NMCA–017, ¶ 19 (concluding that the statutes were, in fact, "superficially identical"), ¶ 28 (acknowledging that the facts of *Fioretti* and *Dugan* differ from the facts of the instant appeal).

{33} Further, a fair reading of *Berry* suggests that the Court considered, and resolved, the issue of what a New Mexico court should do when faced with unsettled or unclear law in a manner different from *Fioretti* and *Dugan*. In *Berry*, our Court of Appeals rejected the defendant's argument that was premised on the possibility that the laws of the other states "could" conflict with New Mexico law, which was the same argument set forth in *Fioretti* and *Dugan*. Rather than concluding that the possibility of a po-

tential conflict could defeat the application of forum law, the court indicated that only proof of an actual conflict will preclude a district court from making a determination that it may apply forum law. *Berry*, 2004–NMCA–116, ¶ 78 ("The forum court is only bound by clearly established law brought to its attention." (quoted authority omitted)).

{34} Finally, with respect to the level of proof required to defeat a court's decision to apply one state's law over another, the Connecticut Supreme Court's rationale in *Dugan* comports with the rationale in *Berry*. The Connecticut court rejected the plaintiff's contention that Connecticut law should apply, in part because the plaintiff had not adequately argued that New York law should apply to the dispute rather than Connecticut law. *Dugan*, 830 A.2d at 758 (noting that the plaintiff did not "adequate[ly] challenge … the trial court's decision … to apply New York law"). This conclusion by the *Dugan* court is consistent with the *Berry* court's determination that New Mexico law could apply to the claims of the entire class arising under a breach of contract theory because the defendant had not adequately demonstrated that the other states' law should apply. *See Berry*, 2004–NMCA–116, ¶¶ 82–886 (addressing and rejecting the defendant's arguments that the laws of the relevant states conflicted). Having considered the two cases relied on by the Court of Appeals, we conclude that *Berry* better sets forth the framework for analyzing an alleged conflict between New Mexico law and the laws of the others class-members' states.

{35} In addition to reading *Sun Oil* differently, *Berry* and *Ferrell* diverge on the issue of who bears the risk of ambiguity in the law. Both opinions appropriately place the initial burden of persuasion on the class proponent by requiring the plaintiffs to persuade the district court that there are no significant variations among the laws of the states connected to the dispute. However, the opinions apportion the risk of ambiguity differently. The *Berry* court places the risk of ambiguity on *the party opposing certification* by requiring that party to demonstrate that the laws of the various states actually conflict. The *Ferrell* court, on the other hand,

places the risk of ambiguity *on the party seeking certification* by requiring that party to disprove all hypothetical conflicts before a court can conclude that forum law applies.

{36} By placing the risk of ambiguity on the party seeking certification, the Court of Appeals' opinion in *Ferrell* can be read as holding that the party seeking certification cannot meet its burden if the laws of the other states are unclear or unsettled, despite significant facial similarities between the statutes at issue. Such a holding places an intolerable burden on the party seeking certification. Multi-state class actions might never be possible if courts must await final appellate court decisions in each state resolving all hypothetical conflicts.

{37} We agree with Plaintiffs that *Berry* sets forth the preferable analysis. The party opposing certification must establish that the laws of the relevant states actually conflict. *Sun Oil*, 486 U.S. at 731–34, 108 S.Ct. 2117. If the class proponents have met their burden and the party opposing certification fails to show that the laws of the relevant states actually conflict through clearly established, plainly contradictory law, then the district court cannot be faulted if it concludes that there is *no material* conflict between the laws of the relevant states. *See Berry*, 2004–NMSC–116, ¶ 80.

{38} The *Berry* court's approach is consistent with the principles underlying our class action rule—judicial economy and fairness to the parties. *See Brooks*, 2004–NMCA–134, ¶ 9 ("The core policy behind the Rule is to provide a forum for plaintiffs with small claims who otherwise would be without any practical remedy. At the same time, the district court must ensure that a class action is not only efficient, but that it is a fair method to all parties, including absent class members and defendants." (citation omitted)). This approach, while not necessarily favoring certification in all situations, does not act as an undue impediment to certification. Similarly, it ensures that the class certification is fair to all parties. Defendants cannot complain about the application of forum law if they have not presented law from another state to the contrary demonstrating a real, irreconcilable, and material conflict.

Further, the plaintiffs will not face the unduly burdensome task of having to disprove all hypothetical conflicts.

**Was an actual conflict proven such that it was inappropriate for the district court to determine that New Mexico law could apply to the entire class?**

{39} With these general principles in mind, we now review whether the district court's decision to apply New Mexico law to the entire class was appropriate. We review a district court's decision to certify a class under an abuse of discretion standard. *Berry*, 2004–NMCA–116, ¶ 25. "An abuse of discretion standard appropriately recognizes the practical, fact-bound, and case-specific nature of the class certification process. The judge who will handle the case is best able to craft the most efficient, manageable, and just means of providing all parties a reasonable forum and remedy." *Id.* ¶ 26. Under an abuse of discretion standard, we will reverse the district court's ruling only if "the court's ruling exceeds the bounds of all reason ... or [if] the judicial action taken is arbitrary, fanciful, or unreasonable." *Meiboom v. Watson*, 2000–NMSC–004, ¶ 29, 128 N.M. 536, 994 P.2d 1154 (quoted authority omitted) (omission in original). The district court's interpretation of Rule 1–023, as well as the district court's choice-of-law analysis, are matters of law, which we review de novo.

{40} In this case, the district court found that the class met the requirements of Rule 1–023(B). The district court made its determination based on its understanding of the various states' laws as presented by the parties. Plaintiffs presented the court with surveys detailing the laws from the various states involved in an attempt to meet their burden of showing that the predominance and superiority requirements of Rule 1–023 were met. These surveys consisted of: (1) excerpts from the relevant statutory provisions, (2) statutory definitions of "premium," and (3) case citations for various legal propositions relating to breach of contract. Allstate submitted a memorandum in opposition, which included a discussion regarding variations among the states' laws. In its memorandum, Allstate specifically argued

that the relevant states differed with respect to certain affirmative defenses as well as contract interpretation, including the use of extrinsic evidence to resolve an ambiguity in the contract. Allstate also argued that the definition of premium varied from state-to-state.

{41} Appropriately, the district court held a multi-day certification hearing. During the hearing, Plaintiffs again argued that the laws of the relevant states did not materially conflict. Allstate countered that significant conflicts existed among the laws of the various states and presented demonstrative exhibits for the court to review during the certification hearing. These demonstrative exhibits, however, are not part of the record because they were not entered into evidence.

{42} Plaintiffs suggested that the variations among the laws of the states connected to the dispute were either irrelevant or did not rise to the level of constitutional significance. For example, in its briefing, Allstate contended that the states differed with respect to authorizing or implying a private right of action for violations of the state insurance code. Plaintiffs countered that they were not seeking a private right of action under any state insurance code, but rather were suing under a common-law theory of breach of contract. Further, Plaintiffs noted that many of the conflicts discussed by Allstate arose in states other than those implicated in the proposed class. More to the point, Plaintiffs insisted that the definition of premium did not vary materially from state to state, and this went to the heart of Plaintiffs' class-wide claims for breach of contract. Additionally, Plaintiffs noted that the affirmative defenses that Allstate argued defeated class certification were simply "hypothetical."

{43} After the hearing, the district court concluded that "a class action is a superior method of litigation instead of individual lawsuits in each member's respective state." The court also concluded that the case was manageable because "there [was] no *debilitating* conflict of law among the thirteen (13) states on the issues of contract interpretation, right to jury trial, and the definition and specification of insurance policy premiums,

the issues to be adjudicated under the breach of contract claim." (Emphasis added.) Significantly, the district court excluded the plaintiffs from Hawaii and Washington, which demonstrates that the court considered the differences between the policies, and the breach of contract claims premised on those policies, in the relevant states.

{44} And, while Allstate argues that certain states may take a different approach with respect to the "four corners" rule for resolving an ambiguity in the contract, the district court's decision about whether an ambiguity exists would again be made using relatively uniform rules. If the district court determines that an ambiguity exists in some contracts, and that the states where those contracts were entered into vary significantly in their approach to the "four corners" doctrine, the district court may revisit its certification decision. Until that time, "there is no need to forecast how the inquiry would actually be resolved in any other court because the case is here, and the decision is to be made here in accordance with reasonably uniform rules." *Berry,* 2004–NMCA–116, ¶ 88.

{45} Thus, Plaintiffs met their burden of showing that the laws of the class states were similar enough to support certification. The statutes at issue do not present "fatal contradictions of law." *Berry,* 2004–NMCA–116, ¶ 87. And while Allstate presented evidence of some differences between the laws of the class states, the district court was not persuaded that the differences rose to the level of constitutional significance. In a case such as this one, where the statutes of the other states have yet to be definitively construed by a state appellate court, any conflict will likely be hypothetical. A hypothetical conflict should not preclude the district court from deciding, on balance, that forum law may be applied to the entire class. Instead, under *Berry* and *Sun Oil,* the party opposing class certification must provide the district court with evidence that an actual conflict exists before a court will be faulted for concluding that forum law may apply to the entire class. In this case, the Court of Appeals implicitly acknowledged that Allstate had not met this burden when it stated "that

if a New Mexico court were to apply New Mexico's statutory definition of premium to plaintiffs from other states, doing so would not run afoul of [*Sun Oil* ]. [T]he court would not be ruling in contravention of the clearly established laws of other jurisdictions because ... there is no clearly established law from any of the jurisdictions on the issue of whether fees constitute premium." *Ferrell,* 2007–NMCA–017, ¶ 39.

{46} Thus, we conclude that the district court's decision to apply New Mexico law, in the absence of a demonstrated, material conflict, was proper. Because the district court's decision to apply New Mexico law to the entire class was appropriate, we conclude that the court did not abuse its discretion when it certified the class, and we remand to the district court for further proceedings consistent with this Opinion.

{47} On remand the district court retains jurisdiction over the class and may revisit its certification decision. *See* Rule 1–023(C)(1). Thus, the court may need to consider changes in the laws of the class states that may have occurred while this appeal has been pending to ensure that class certification is still appropriate. *See Ferrell,* 2007–NMCA–017, ¶ 52 (" 'If the court has second thoughts on any issue, it can reconsider and either decertify or modify certification if the manageability of damages adjudication or distribution proves to be an intolerable burden on the judicial system or otherwise proves to create a situation that is less fair and efficient than other available techniques.' " (quoting *Romero,* 2005–NMCA–035, ¶ 98)).

### Continued Viability of the Restatement (First) of Conflict of Laws for Multi–State Class Action Lawsuits

{48} After determining that an actual conflict existed in this case, the Court of Appeals correctly relied on the Restatement (First) of Conflict of Laws and the place of contracting rule contained within the Restatement (First) to determine what law ought apply to the class members from states other than New Mexico. *See Ferrell,* 2007–NMCA–017, ¶¶ 30; Restatement (First) of Conflict of Laws § 311, at 395 (1934). However, we note that the Court of Appeals' adoption of the actual conflict doctrine represents a divergence from the analysis traditionally undertaken under the Restatement (First) because, as discussed below, the Restatement (First) does not contemplate a comparison of the laws of the states involved.

{49} Despite being contrary to a traditional choice-of-law analysis, the Court's decision to adopt the actual conflict doctrine is consistent with the procedures required by our class action rule. As discussed above, a district court must undertake an analysis of the laws of the relevant states to ensure that the predominance and superiority requirements of the class action rule are met. If a court finds that the laws of the relevant states are similar enough to meet the predominance requirement, but then has to apply the laws of the state where the insured entered into the contract, the district court's analysis regarding predominance would have been in vain. Thus, a strict adherence to the traditional principles espoused by the Restatement (First) may render multi-state class actions a virtual nullity. Because we reverse the Court of Appeals' determination that an actual conflict exists in this case, we could stop at this point. However, because the doctrine we currently follow may no longer be appropriate for multi-state class action litigation, we resolve this potential problem in this Opinion for the benefit of our class action jurisprudence.

{50} New Mexico has traditionally followed the Restatement (First). *See United Wholesale Liquor Co. v. Brown–Forman Distillers Corp.,* 108 N.M. 467, 469, 775 P.2d 233, 235 (1989). The Restatement (First) consists of rules for each substantive area of the law, which are based on a particular predetermined contact. Thus, under the Restatement (First), a court does not choose between competing laws, but simply chooses between competing jurisdictions. *See* Scoles et al., *supra,* § 2.7, at 21. If a party argues that the laws of the state where the right vested conflict with a fundamental public policy of New Mexico, a New Mexico court may refuse to apply that state's law. *See United Wholesale Liquor Co.,* 108 N.M. at 470, 775 P.2d at 236.

{51} As the Court of Appeals correctly noted, if an actual conflict exists, a court presiding over a multi-state class action lawsuit in a Restatement (First) jurisdiction must make an initial determination of which state or states' law applies to the controversy, based upon the traditional principles of the Restatement (First). *See Ferrell*, 2007–NMCA–017, ¶¶ 30–31. Following this traditional approach literally, when faced with a multi-state class action, a court could not consider the laws of the other states connected to the dispute; instead the court would be required to apply the rule from the Restatement (First) that pertains to the claim alleged. *See* Leflar et al., *supra*, § 86, at 256 (noting that a court in a state that has adopted the Restatement (First) "ha[s] only to determine ... the nature of the issue before it ..., look up the choice-of-law rule conceptually appropriate to that type of case, then apply the rule to the facts").

{52} Thus, with respect to the instant appeal, the district court would have simply applied the Restatement (First) § 311, at 395, "the [law of] 'the place of contracting.'" Assuming that the place of making the contract was the state where the insured entered into the contract, the district court would have been required to apply the separate law of each of the thirteen states involved in the class action, without considering the competing laws and policies of the other states connected to the suit. This leads to problems and could conflict with the policy behind class actions, i.e., the district court would have no choice but to apply the thirteen states' laws, which may make the class action unmanageable.

{53} Because of the mechanical nature of its application, the Restatement (First) has been widely criticized as being inflexible, rigid, and leading to unjust results. *See* Scoles et al., *supra*, § 2.7, at 21–22. Another criticism levied against the Restatement (First) is that it does not recognize choice-of-law provisions. Scoles et al., *supra*, § 18.14, at 989. Currently only eleven states, including New Mexico, continue to follow the choice-of-law rules set forth in the Restatement (First) with respect to contract claims. Scoles et al., *supra*, § 2.21, at 87.

{54} Twenty-four states have rejected the Restatement (First) in favor of the Restatement (Second) of Conflict of Laws (1971) with respect to contract conflicts. Scoles et al., *supra*, § 2.23, at 99. The Restatement (Second) eschews a rigid, mechanical selection of a particular jurisdiction and, instead, focuses on the content of the laws of the states connected to the dispute. As such, a court does not choose between two competing jurisdictions, but between competing bodies of law, and competing public policies. *See* Leflar et al., *supra*, § 100, at 282–84. Additionally, the Restatement (Second) proceeds issue by issue, rather than by an entire claim, so one issue may be resolved under the law of one jurisdiction, while another issue may be resolved under the law of a different jurisdiction. Further, the Restatement (Second), unlike the Restatement (First), acknowledges the realities of modern contracts and respects party autonomy by allowing the parties to choose the law that will govern the dispute. Restatement (Second) § 187, at 561; *see also* Symeon C. Symeonides, *Oregon's Choice–of–Law Codification for Contract Conflicts: An Exegesis*, 44 Willamette L.Rev. 205, 222 (2007) ("[T]he drafters of the First Restatement rejected party autonomy.... Recognizing this reality, the Restatement (Second) formally sanctioned and codified the principle of party autonomy."). If the contract has a valid choice-of-law provision, that law presumptively applies. Restatement (Second) § 187, at 561.

{55} In the absence of an enforceable choice-of-law provision, and if the rules regarding specific types of contracts or specific issues in contract do not supply the law to be applied, the Restatement (Second) relies on the "most significant relationship" test which is used to determine which state has the most significant relationship to the transaction and to the parties. *Id.* § 188(1), at 575. A court considers a variety of contacts when making a determination about which state's law applies to the dispute. *See id.* (listing the following relevant contacts "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the

contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties"). Significantly, a court must consider both the number of contacts in a given jurisdiction, and even more importantly, the *quality* of those contacts. *See id.* ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."). The qualitative nature of a particular contact is determined by reference to the "Choice–of–Law Principles" set forth in Section 6, which include:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Id.* § 6, at 10.

{56} After comparing the Restatement (First) and the Restatement (Second), it is apparent that the rigidity of the Restatement (First) is particularly ill-suited for the complexities present in multi-state class actions. It does not allow a court to consider the competing policies of the states implicated by

the suit.[3] We conclude that the Restatement (Second) is a more appropriate approach for multi-state contract class actions. *See, e.g., Chrysler Corp. v. Skyline Indus. Servs., Inc.,* 448 Mich. 113, 528 N.W.2d 698, 703 n. 28 (1995) (declining to "explicitly abandon" the traditional approach but acknowledging that such an approach "may prove to be unworkable under certain factual situations, such as those presented [in the appeal at bar], which demand a more extensive review of the relative interests of the parties and the interested states").

{57} Thus, if a district court determines that the laws of the states implicated in a multi-state contract class action actually conflict, the court should then apply the principles of the Restatement (Second) to determine which law applies to the disputed issue. Once the court determines which law applies, the court must then determine whether the application of that chosen law is constitutional. *See Phillips,* 472 U.S. at 821–22, 105 S.Ct. 2965 (holding that, in the presence of an actual conflict, the choice to apply a single state's law is constitutional so long as the chosen state has "a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiffs class, contacts 'creating state interests,' in order to ensure that the choice of [forum] law is not arbitrary or unfair.'" (quoting *Allstate Ins. Co.,* 449 U.S. at 312–13, 101 S.Ct. 633)). Only then may a district court determine whether the class meets the requirements of our class action rule.

---

**3.** Our courts have been willing to consider the Restatement (Second) approach in other circumstances. *See Fed. Deposit Ins. Corp. v. Hiatt,* 117 N.M. 461, 470, 872 P.2d 879, 888 (1994) (Montgomery, C.J., dissenting) ("I wish to register my continuing objection to this Court's rigid adherence to the lex loci contractus choice-of-law rule for deciding which state's law will govern a dispute over a contract." (footnote omitted)); *id.* at 470 n. 3, 872 P.2d at 885 n. 3 (noting that "[i]n *State Farm Mutual Insurance Co. v. Conyers* ... [the New Mexico Supreme] Court displayed a willingness to consider an approach, such as that embodied in Section 6 of the Restatement (Second) of Conflict of Laws (1971), other than the strict lex loci contractus rule." (citation omitted)); *State Farm Mut. Ins. Co. v. Conyers,* 109 N.M. 243, 247, 784 P.2d 986, 990 (1989) ("In any event, in this case it is not necessary for us either to reaffirm a lex loci contractus rule categorically or to adopt or reject for all cases the

Restatement (Second) 'significant relationship' tests. Even were we to apply a Restatement (Second) analysis, New Mexico law would still govern the outcome of this particular dispute."); *In Re Gilmore,* 1997–NMCA–103, ¶ 20, 124 N.M. 119, 946 P.2d 1130 ("The approach, if not the result, [taken by the New Mexico Supreme Court] in *Torres* is consistent with the Restatement Second. ... Although our Supreme Court has followed the Restatement Second in some respects—principally, with regard to forum non conveniens, and jurisdiction—we are well aware that it has not embraced the Restatement Second with respect to choice-of-law issues in either tort or contract." (citations omitted)); Scoles et al., *supra,* § 2.21, at 90 ("New Mexico's highest court has recently acknowledged its past adherence to the *lex loci delicti* rule but did not in fact apply it." (citing *Torres v. State,* 119 N.M. 609, 894 P.2d 386 (1995))).

## Forum–Selection Clause

█ {58} In the instant case, some class member policies, issued in certain states, contain forum-selection clauses designating the state where the insured entered into the policy as the forum. Allstate contends that these forum-selection clauses preclude class certification in New Mexico. We reach this issue because, unlike the Court of Appeals, we affirm the district court's certification decision. *See Ferrell*, 2007–NMCA–017, ¶ 5.

{59} Plaintiffs argue that Allstate waived this defense by not raising it in its first responsive pleading because forum-selection clauses are properly treated as venue defenses under Rule 1–012(B)(3) NMRA. The district court agreed and concluded that Allstate had waived the defense. Allstate counters that forum-selection clauses are properly brought as motions to dismiss for failure to state a claim under Rule 1–012(B)(6), which may be raised at any time. *See* Rule 1–012(H)(2). While our courts have discussed in general terms the nature and effect of forum-selection clauses, our courts have yet to determine whether a forum-selection clause should be brought as a motion to dismiss for failure to state a claim or as a motion to dismiss based on improper venue. Thus, we now consider the proper analysis for a forum-selection clause defense.

{60} Courts disagree about the proper procedural mechanism a party must use to raise a forum-selection clause defense. The majority of circuit courts that have considered the issue have concluded that forum-selection clauses are properly raised under Federal Rule of Civil Procedure 12(b)(3), improper venue. *See Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir.2006); *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 n. 3 (1st Cir.2001) (noting that the Seventh, Ninth, Eleventh, and District of Columbia Circuits "consider[ ] such motions as based on Rule 12(b)(3)"); *Calchem Corp. v. Activsea USA LLC*, No. CV–06–1585, 2007 WL 2127188, at *1 n. 2 (E.D.N.Y.2007) (noting that courts in the Fifth Circuit have considered motions to dismiss based on forum-selection clauses "as falling under Rule 12(b)(3) based on improper venue"). The First and Third Circuits have decided that forum-selection clauses are properly raised in Rule 12(b)(6) motions to dismiss, *see Silva*, 239 F.3d at 387 n. 3, while the Second Circuit has concluded that a motion to dismiss based on a forum-selection clause should be brought as a Rule 12(b)(1) motion. *See AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 153 (2d Cir.1984). The Tenth Circuit, while not specifically deciding that such a defense must be raised as a Rule 12(b)(3) motion, has noted that "[a] motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R.Civ.P. 12(b)(3)." *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft* ("BMW"), 314 F.3d 494, 497 (10th Cir. 2002) (quoted authority omitted).

{61} We find the Fourth Circuit's analysis in *Sucampo*, 471 F.3d at 547–49 persuasive and conclude that forum-selection clauses are properly treated as venue defenses. In *Sucampo*, the court rejected an analysis of such a motion under Rule 12(b)(1), in part, because "a motion to dismiss under Rule 12(b)(1) is non-waivable and may be brought at any time—even on appeal—regardless of whether a litigant raised the issue in an initial pleading." *Sucampo*, 471 F.3d at 548. The court expressed its concern that a litigant's choice to wait to assert a forum-selection clause "could result in a waste of judicial resources and allow defendants to 'test the waters' of the plaintiff's chosen forum, before invoking their rights under the forum-selection clause." *Id.* at 549. The court rejected an analysis of such a motion under Rule 12(b)(6) because a Rule 12(b)(6) motion can be raised at any time before an adjudication on the merits and "would present some of the same timing concerns as in the 12(b)(1) context." *Sucampo*, 471 F.3d at 549. The court also noted that "[U.S.] Supreme Court precedent suggests that 12(b)(6) is not the appropriate motion for enforcing a forum-selection clause." *Id.*

{62} Having rejected an analysis under Rule 12(b)(1) and Rule 12(b)(6), the court determined that a motion to dismiss based on a forum-selection clause is properly treated as a Rule 12(b)(3) motion. *Id.* The court concluded that such an analysis "would avoid

the ... timing disadvantages of utilizing Rule 12(b)(1) or (6) and [would] be consistent with Supreme Court precedent." *Id.* One particular benefit of utilizing Rule 12(b)(3), noted the court, is judicial efficiency because "a defendant will have to raise the forum selection issue in her first responsive pleading or waive the clause." *Id.* "This will result in an efficient disposition of cases involving forum-selection clauses and not waste judicial resources on a case that ultimately will have to be dismissed and relitigated in another forum." *Id.*

{63} We find this reasoning particularly persuasive when dealing with multi-state class actions certified under Rule 1–023(B)(3) of our class action rule. Allowing a defendant to wait to raise a forum-selection clause defense until after certification, i.e., "testing the waters" of the class proponents' chosen forum, is inefficient and may result in a waste of judicial resources. The district court would have spent unnecessary time and effort analyzing the laws of each implicated state to ensure that the predominance and superiority requirements were met. Thus, allowing a defendant to raise a forum-selection clause defense at any time during the litigation undermines the "economies of time, effort, and expense" sought to be achieved by Rule 1–023(B)(3). *Berry*, 2004–NMCA–116, ¶ 47 (quoted authority omitted).

{64} Instead, treating a motion to dismiss based on a forum-selection clause as a Rule 1–012(B)(3) motion comports with the goals underlying our class action rule—"judicial efficiency and the need to provide a forum for the vindication of dispersed losses." *Berry*, 2004–NMCA–116, ¶ 47. Because a defendant would have to alert the district court of its forum-selection clause defense in the initial pleading or motion, or waive the defense, the court would not waste judicial resources on an unnecessary predominance and superiority analysis. *See* Rule 1–012(H); *Sundance Mech. & Util. Corp. v. Atlas*, 109 N.M. 683, 690, 789 P.2d 1250, 1257 (1990) ("Certain defenses (lack of personal jurisdiction, improper venue, insufficiency of process or service of process) must be asserted at the outset of an action; otherwise these defenses are waived."). Thus, a motion to dismiss

based on a forum-selection clause is properly analyzed under Rule 1–012(B)(3).

{65} Because Allstate did not raise the forum-selection clause as a defense in its motion to dismiss, or any other pleading prior to the certification hearing, we affirm the district court's ruling that Allstate waived the defense. *See Steward v. Up N. Plastics, Inc.*, 177 F.Supp.2d 953, 958 (D.Minn.2001) ("[D]endants failed to raise any objection to venue in their first responsive pleading, as required under the rules. Additionally, a significant amount of time and motion practice has already taken place, including the filing of a motion for summary judgment, thus further establishing defendants' waiver.").

## CONCLUSION

{66} We reverse the Court of Appeals and affirm the district court's certification decision. We remand to the district court for proceedings consistent with this Opinion.

{67} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, Justices, and RICHARD E. RANSOM (J. Pro Tem.).